IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No CR 04-0125 VRW |
| Plaintiff | ORDER |
| v | |
| RELIANT ENERGY SERVICES, INC, et al, | |
| Defendants. | |

In this exceptionally long pending criminal proceeding, both the government and defendants propose extensive use of so-called "expert testimony." The government has designated three such witnesses for its case in chief; defendants have designated seven. To at least some extent, both sides have objected to the other side's experts based on pre-trial expert disclosures. The government moves to exclude defendants' experts for non-compliance with FRCrP 16, Doc #292, and also moves to exclude purportedly "irrelevant and cumulative testimony from defense experts." Doc

1  #288.  Defendants have moved to exclude the testimony of one of
2  government's experts, Richard E Goldberg.  Doc #180.  The court
3  first addresses the government's two motions and then turns to the
4  defense motion.

I

The government moves to exclude all defendants' experts for failure to comply with FRCrP 16.  Doc #292.  The government argues that the defense has produced only "vague summaries * * * bereft of any of the methodologies, bases or reasons underlying these opinions."  Id at 1.  Defendants argue that their disclosures meet and exceed the requirements of Rule 16 and that the rules do not require "defense reciprocal discovery."  Doc #304.  Defendants' first argument is incorrect, their second a misconstruction of the rules.

Taking defendants' arguments in reverse order, Rule 16 uses exactly the same language for the defense's discovery obligation as it does for the government's obligation:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. * * * *The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.*

Fed R Cr Proc 16(a)(1)(G)

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if
>
> (i) the defendant requests disclosure under subdivision (a)(1)(G) and the government complies * * *

2

> *The summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.*

Fed R Cr Proc 16(b)(1)(C).

It is a general rule of statutory construction that "identical words used in different parts of the same act are intended to have the same meaning." Gustafson v Alloyd Co, 513 US 561, 570 (1995) (internal quotation marks omitted).  Law has its subtleties, but this is not one of them.

It is true, as defendants argue, that simply because the government chooses voluntarily to provide a greater level of detail than the rule requires, the government cannot thereby force that extra measure of detail from the defense.  Doc #304 at 7.  But, as is presently explained, that is not the situation here.  It is also true that the mechanics of presenting expert testimony in a criminal trial differ somewhat from a civil trial.  In the former, both the burden of proof and burden of production are balanced heavily against one side.  But the rules of evidence are the same in a criminal case as in a civil trial, and the court's gatekeeper role with respect to opinion testimony remains in both types of cases.  The Rule 16 discovery obligation must be read in the uniform light cast by the rules of evidence.  Under that light, it cannot be that Rule 16 requires detailed discovery by the government of proposed expert testimony and only a vague and general disclosure by a defendant.

It makes sense, therefore, to construe Rule 16 as imposing an objective level of disclosure and specificity for expert testimony, rather than the unbalanced subjective obligation for which defendants contend.  The court can look in that regard to

3

the fundamentals of what the rules of evidence require in assessing whether one side or the other has met its discovery obligation under Rule 16.

The rudiments of that disclosure are that any party seeking to offer an expert witness must disclose, in advance of the witness testimony:

> 1) Any reports and analyses that the expert has prepared, concerning the facts of the case;
>
> 2) Copies or a specification of all documents, writings and other information reviewed by the expert or on which the expert's opinions are based, in sufficient detail so that the opinion rendered can be tested against that upon which it is based;
>
> 3) The expert's work papers; and
>
> 4) The expert's curriculum vitae or professional resumé.

See FRCrP 16 Advisory Committee Note to the 1993 amendment ("[T]he amendment requires a summary of the bases relied upon by the expert. That should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts."); see also FRCP 26(a)(2).

With the above rudiments in mind, the court turns to defendants' disclosures. Doc #292, Ex 4. A few examples suffice to illustrate the shortcomings of these disclosures:

> Mr Jermain will testify that in his opinion, in June 2000, the PX markets were still considered new or immature, and the compliance unit expected to and did see day-to-day changed [sic] in bids submitted by the market participants that reflected experimentation as participants learned what strategies maximized profits, included [sic] bidding strategies that were expected to alter the PX clearing price. Id at 12.

\\

**4**

> It is expected that Mr Hamal will testify regarding the structure and performance of the California wholesale markets, the physical characteristics and supply-demand conditions of the Western power markets, and the price caps and other rules in place regulating bidding leading up to and during the energy crisis. * * * It is further expected that Mr Hamal will testify that in his opinion Reliant's bidding during the week of June 19, 2000 fell within the range of bidding patterns and practices of other market participants.  Id at 2.
>
> Mr Tranen will testify that from the inception of the markets in 1998 through 2001, the CAISO and FERC implemented the tariffs regulating the market consistent with an understanding that strategic, profit-maximizing behavior, including behavior that was intended to move prices, was not prohibited unless FERC adopted a rule prohibiting the conduct after determining that the behavior was detrimental to the markets.  Id at 9.

These disclosures are altogether too general and vague to meet the basic disclosure requirements for opinion testimony.

Accordingly, defendants must make additional disclosures to meet the fundamental requirements of FRCrP 16, as set forth above.  The court recognizes that FRCrP 16 does not permit the court to order depositions in criminal cases, and FRCrP 15 makes no provision to take a deposition in a criminal case "for convenience and efficiency."  <u>United States v Fei Ye</u>, 436 F3d 1117, 1123 (9th Cir 2006).  The parties may nonetheless conclude that a deposition would be a better alternative to more complete disclosures.  Should the parties <u>agree</u> to that alternative, it should be acceptable.  But in the absence of an agreement, defendants must make disclosures in accordance with the foregoing.

II

Defendants claim that all but one of their experts offer "specialized knowledge" rather than "scientific theory."  Doc #304 at 8.  The exception is George Schink, an economist.  It is said

5

that Dr Schink performed a preliminary regression analysis. Id. Any reports or analyses Dr Schink has prepared in connection with this case must, of course, be produced.

Defendants' characterization of their other experts as offering "specialized knowledge" and not "scientific theory" raises a concern about the admissibility of such testimony. A claim of specialized knowledge does not open the door for evidence otherwise inadmissible. In the present case, the court does not doubt that the working of the California electricity market is sufficiently removed from common experience that some testimony on this specialized knowledge may be helpful to the jury. But the absence of indicia of reliability that attend testimony based on "scientific or technical" knowledge warrants caution and makes a fuller description of the proposed testimony than defendants have heretofore provided even more appropriate and necessary. Fuller disclosures would appear largely, if not entirely, to obviate the government's remaining concerns. The government requests, based on its review of defendants' expert disclosures, that the court exclude certain categories of expert testimony. Doc #288.

A

First, the government argues that proposed defense expert testimony that Reliant's bidding strategy did not violate market rules in place as of June 2000 should be excluded in light of the court's exclusion of the MMIP. Id at 3-5. The government argues that if the MMIP risks overwhelming the jury's ability to define illegitimate conduct for itself, expert testimony runs the same risk, and that expert testimony on this subject will create an incomplete version of the market rules. Id.

6

The court disagrees. Both sides can introduce testimony on the market rules, including different types of conduct listed in the MMIP. The parties simply may not refer specifically to the MMIP. 10/17/05 Hr'g Tr at 74. The government's expert disclosures show that it seeks to introduce opinion testimony on the same subjects (e g, whether Reliant manipulated the forward markets, how the markets worked under competitive conditions, etc.) Doc #131. Testimony on the market rules is directly relevant to the price manipulation charges. Both sides can introduce this testimony without reference to the MMIP.

The court re-iterates its warning, however, that it will consider arguments by the government that defendants may have opened the door to use of the MMIP on cross-examination and rebuttal.

B

Next, the government seeks to exclude defense expert testimony regarding other market participants' bidding strategies. Doc #288 at 5-6. For example, defense experts plan to testify that the utilities' underscheduling of demand in the PX was permissible under the market rules. Id. The government argues that this has no bearing on whether Reliant illegally attempted to manipulate the market. Id. Defendants respond that they are entitled to present evidence of how the market worked and how prices were set, which includes evidence of how other market participants behaved. Doc #291 at 5.

The court construes this as an extension of the government's October 2005 motion in limine to exclude evidence of uncharged conduct by PG&E and other non-party utilities. Doc #182.

As it did in October 2005, the court reserves ruling on this issue, reiterating its statement from the 2005 pretrial conference:

> Court: Well, I certainly share the Government's concern about getting into a collateral question of whether PG&E had conducted itself legally or not * * * But PG&E certainly was one of the major customers. And its conduct - its behavior in the market may very well illuminate what our normal market process sees. And, therefore, I don't believe that I can on a blanket basis exclude evidence of PG&E's conduct. But I'm not going to allow the Defendants to put PG&E on trial. And so I'll do the best I can to try to stay on the right side of that line. 10/17/05 Hr'g Tr at 107-08.

C

The government seeks to exclude defense expert testimony on events that occurred after June 2000. Doc #288 at 6-7. Specifically, the government argues that defense experts will testify on emissions related events that took place after defendants' decision to shut down their plants on June 21 and June 22, 2000. Id. These "events" were price increases and various monetary penalties imposed on electricity generators. Id. The government argues that these events are irrelevant because they occurred after the fact and could not possibly have influenced defendants' decision to shut down their plants during the week in question. Id.

Defendants argue that these events are relevant to prove that statements that the government alleges were false in fact were true, i e that defendants' predictions about future market conditions proved "very accurate." Doc #291 at 5-6.

Defendants, of course, are not on trial for the inaccuracy of their projections about electricity prices, monetary penalties or anything else. Hence, the ultimate accuracy of a

8

belief about a future event does not help defendants.  What matters is whether defendants had reason to act or believe as they did when they acted or made the statements attributed to them.  Subsequent events vindicate defendants, and are relevant, only to the extent that defendants can show as a threshold matter a reason to act or believe, and even then subsequent events are of limited value, providing merely some evidence that defendants' acts or beliefs were reasonable.

D

The government seeks to exclude expert testimony regarding the alleged "objective reasonableness" of defendants' decisions to shut down plants.  Doc #288 at 7-8.  Specifically, the government objects to defense experts' testimony that it was "objectively reasonable" to believe that the maintenance performed at the plants was likely to improve the reliability of the units and that it was "objectively reasonable" to have concerns regarding the ability of the facilities to operate during the entire year 2000.  Id.  The government argues that this constitutes an impermissible effort to tell the jury that defendants lacked the requisite intent.  The court will allow the testimony but warns that defense experts may not draw the ultimate conclusion for the jury.  The testimony is only admissible insofar as it relates to objective market conditions.  Accordingly, Mr Tranen's proposed testimony that "Reliant's conduct * * * was within the normal forces of supply and demand, and could not therefore have created *or otherwise been intended as an attempt to create an artificial price*" [Doc #304, Ex 4 at 25], and similar testimony run afoul of FRE 704(b) and will not be permitted.

9

**E**

Finally, the government argues that defendants intend to introduce cumulative expert testimony in the areas of market rules, strategic bidding, and alleged flaws in the analysis of government expert Dr Goldberg. Id at 8-12. The government's argument is well-taken. It appears from defendants' sketchy account of their proposed expert testimony that multiple defense experts may be offering the same opinion on numerous points. The court, however, finds that a ruling on this objection would be premature and reserves ruling until defendants have made disclosure of their proposed expert testimony adequate under FRCrP 16.

**III**

Last, defendants make a <u>Daubert</u> challenge to certain testimony of government expert Dr Richard E Goldberg. Doc #180. Dr Goldberg is the government's expert on whether manipulation of the spot market for electricity caused price artificiality in the future/forward market. Id. Defendants contend that Dr Goldberg has not sufficiently tested the statistical significance of the correlations he has observed between the spot and term markets. Id.

Dr Goldberg's report concludes that increases in spot prices during the week of June 19, 2000 were more likely than not produced by Reliant's reduced generation levels. Doc #131, Ex 4 at ¶¶ 44, 49. Dr Goldberg rejects the alternative explanation that the increase was attributable to industry news. Id at ¶¶ 46, 49. Dr Goldberg also rejects the possibility that more than half of the

\\

10

increase in spot prices could have been caused by the increase in gas prices. Id at ¶¶ 48, 49.

Dr Goldberg's opinion appears to hinge on Dr Hildebrandt's testimony that Reliant's reduced generation levels during the week of June 19 led to a spike in price levels. As such, it appears that the probative value of Dr Goldberg's testimony is quite limited. That testimony appears limited to his opinion as to what part of the increased prices during the relevant period can be attributed to Reliant's reduced generation levels. The foundation for this testimony appears to be Dr Hildebrandt's testimony.

If the jury does not find that Reliant's reduced generation levels during the relevant period were part of a scheme to manipulate the price of electricity, then Dr Goldberg's testimony would appear to be irrelevant and must be excluded. The sole relevance of Dr Goldberg's testimony would, therefore, appear to go to the amount of loss suffered as a result of defendants' alleged wrongdoing.

This state of the record does not permit the court to exclude Dr Goldberg's testimony in its entirety. Accordingly, defendant's motion is DENIED without prejudice. Even if Dr Goldberg's testimony is admitted, however, it appears defendants would be entitled to an instruction that unless the jury finds that Reliant's reduced generation levels on June 20 and 21 caused the accompanying price increase in electricity, the jury should ignore and disregard Dr Goldberg's testimony.

IV

For the reasons given above, defendants are ordered to provide full expert disclosures by March 12, 2007. The government's request to exclude testimony of defendants' experts on whether defendants' behavior was within market rules or was "objectively reasonable" is DENIED. The government's requests to exclude the testimony of defendants' experts on other market participants' bidding strategies and to exclude cumulative testimony by defendants' experts are RESERVED. The government's request to exclude the testimony of defendants' experts on events that occurred after June 2000 to show truthfulness of defendants' statements made prior to those events is also RESERVED as discussed herein. Defendants' motion to preclude testimony of Dr Goldberg is DENIED without prejudice to renewal subject to Dr Hildebrandt establishing a foundation.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge